SCHULES PURE GRAPE JUICE CO., INC., Plaintiff, *v.* OGDEN L. MILLS, Agent for Director General of Railroads, Defendant.

Supreme Court, New York County, March 7, 1933.

*Charles I. Oliver,* for the plaintiff.

*Madison G. Gonterman,* for the defendant.

WALSH, J.    This action is brought to recover damages alleged to have been sustained by plaintiff arising out of the transportation of 145 carloads of grapes delivered by defendant to plaintiff as ultimate consignee, at Highland, N. Y., during September, October and November, 1919.    During this period the railroads of the United States were under Federal control and were operated by the Director General of Railroads.    The shipments originated at various points upon the lines of other railroads operated by defendant and were delivered to defendant as Director General of the Central New England Railroad Company at Maybrook, N. Y., for transportation and delivery at Highland, N. Y.

The shipments were transported in interstate commerce.    Each of the carload shipments was transported subject to the provisions of what is known as an " order bill of lading," consigned to the order of the shipper with instructions to " notify Schules Pure Grape Juice Company, at Highland, New York, State of New York."

Plaintiff claims the loss was occasioned by the failure of defendant to transport these grapes with reasonable dispatch.    Defendant, on the other hand, contends that there was no violation on its part of the obligation imposed on it as carrier.    That the primary cause of the delay was congestion at the Highland station due to the fact that plaintiff had caused large quantities of grapes to be transported to it, well knowing the limited facilities of the carrier for handling freight at said station.    That plaintiff failed promptly to unload the grapes after same had been placed so as to be available for unloading.    Also that, notwithstanding defendant offered to provide such switching facilities as would enable plaintiff to expeditiously unload the grapes, plaintiff failed to avail itself of same.    It is also contended by defendant that it was not required

to make delivery until presentation and surrender of the bills of lading, properly indorsed, and that there was no such presentation by plaintiff.

Plaintiff, prior to and during the period here involved, was engaged in manufacturing grape juice at its plant in Highland, N. Y. For such manufacture it used Concord grapes grown in the vicinity of Highland and also in the western part of New York. Grapes were pressed by it at its plant when ripe. The season for such pressing was from the latter part of September until the end of October.

In 1919 plaintiff purchased from dealers in western New York 303 carloads of grapes, of which 189 were received from the Central New England railroad. The balance was received from the West Shore railroad. It also purchased from local farmers 2,700 tons of grapes. With the West Shore and the farmers' grapes we are not directly concerned.

No claim is made respecting 45 of the above 189 carloads of grapes. As to the remaining 144, claim is made for damage resulting by reason of deterioration of the grapes due to delay in transportation and delivery.

It was established that the grapes when loaded in the cars for shipment to Highland were in good condition. Plaintiff's expert, whose testimony was not contradicted, stated that these grapes would remain in good condition for about ten days.

It is not disputed that the cars as to which delay is claimed were not placed upon the delivery tracks of the Central New England railroad at Highland within ten days from the respective dates of shipment of same.

The 144 cars above mentioned were received at their respective shipping points between about September twenty-fourth and October sixth. The usual time of transit to Highland was about five days. Most of the cars arrived at Highland within that time. On arrival the cars were placed upon the storage tracks and notices of arrival sent to plaintiff. From time to time these cars were removed from the storage tracks and placed on the delivery tracks after which placement they were unloaded by plaintiff, such placement and unloading being completed about November 14, 1919.

The facilities of defendant for handling freight at the Highland station were a storage yard with a usable capacity of about 150 cars and three delivery tracks upon which there could be placed about 16 cars. Cars on the storage tracks were not available for loading or unloading but had to be transferred to the delivery tracks. Freight ordinarily was delivered to and taken from Highland by a way freight train which started from Maybrook, some twenty-four miles away, east bound, reaching Highland some time

before noon. Upon arrival it delivered such freight as was consigned to Highland and took away such freight as was to be carried east. At this time the engine would be available for such switching to and from the storage tracks to the delivery tracks as was required by the station agent. After this the engine would engage the way freight and proceed to Poughkeepsie. The run to Poughkeepsie took but a few minutes. From Poughkeepsie the way freight would return to Highland, west bound to Maybrook. Freight would again be delivered and picked up at Highland, and, if required, additional switching would be done, upon the conclusion of which the engine would again engage the way freight and proceed westerly toward Maybrook. There were usually two switching operations daily. At times the way freight bound east did not continue beyond Highland but returned from there to Maybrook, on which occasions there would be but one daily switching. It was possible to have additional switching, but this could be had only upon request to the station agent in which case it could be provided by sending a switching engine from Poughkeepsie or from Maybrook.

Conditions for loading and unloading freight at the Highland station were normal prior to September 28, 1919. Beginning at that time carloads of grapes consigned to the order of shippers with instructions to notify plaintiff, arrived in large numbers, 149 arriving at such station between said date and October eighth. There were also received and kept at Maybrook, between October seventh and twelfth, thirty additional cars of grapes. These cars were subsequently transferred to the Highland station storage tracks on October nineteenth and twentieth. Outside of these no grapes arrived for plaintiff after October eighth.

During the period between September twenty-eighth and November fourteenth, by which time all of the grapes had been unloaded, there were received at the Highland station of defendant consigned to plaintiff about thirty-five cars of bottles and also about six cars of miscellaneous freight. There were also loaded at and shipped from said station by plaintiff approximately fifty cars of freight. In addition there were received for consignees other than plaintiff or loaded and shipped by persons other than plaintiff some 100 cars of freight.

Taking into consideration the number of cars thus received and shipped from the Highland station between September twenty-eighth and October fourteenth, and particularly the large number of grape cars arriving between the said first mentioned date and October eighth, it is quite evident, considering the capacity of the delivery tracks and the limited switching facilities ordinarily provided by defendant, that congestion would occur and prompt

placing and unloading of cars be impossible, and that, in order that there might be such prompt placement and unloading, special provision for the more expeditious handling of the cars would have to be made.

Defendant admits it could have expedited the removal of cars from and the placement of cars on the delivery tracks by furnishing, additional switching, which it claims it had available and offered to plaintiff, but that said offer was not accepted. That the reason for the delay was that the grapes came in faster than plaintiff expected and in greater quantities than plaintiff could handle, and hence it was unable to unload more cars than were actually placed. Plaintiff, while admitting that the grapes came in somewhat sooner than expected, denies inability and unwillingness to unload same promptly, but states that it unloaded cars placed with reasonable speed and claims that the delay in placing the cars on the delivery tracks was due to defendant's neglect.

On the delivery tracks were placed not only the grapes consigned to plaintiff, but also all other freight. The record of daily switching shows that not over fifteen cars were placed on any one day and that on most days there were less. On several days not more than five cars were placed. Of these so placed only a part were grapes. The grape placement during this period did not average five cars a day. The grape cars placed were, with few exceptions, unloaded on the day of placement or the day following. It is obvious, considering the number of grapes in the storage yard and the fact that they were perishable, that the limited placement was a failure on the part of defendant to transport and deliver the grapes with reasonable dispatch. The failure to duly place more clearly appears to be an unreasonable detention when it is considered that defendant, by its own admission, could readily have furnished such additional switching facilities as were necessary to make greater and more expeditious placement. But it is claimed that the failure to give the additional switching was due to plaintiff's inability and unwillingness to unload more grapes than were actually placed. The evidence permits no such finding. Plaintiff had ample trucking facilities. It unloaded without much delay all cars placed. While it may be that, had defendant promptly placed the cars, the unloading thereof would have somewhat taxed the capacity of plaintiff's plant and storage facilities, it does not necessarily follow that there was inability and unwillingness to unload and handle the grapes. The capacity of plaintiff's plant is not material save as to the probabilities. The effect of defendant's contention is largely nullified by the direct testimony in behalf of plaintiff that it was able and willing to unload and handle the

grapes if they had been made available for unloading. Its conduct with respect to those grapes that were placed bears out this testimony. The defendant, unless otherwise instructed, was under the duty to deliver promptly. No instruction to defer delivery is shown. One of its witnesses testified that he spoke to plaintiff's president about the congestion in the storage yard and offered to provide additional facilities, but that the offer was not accepted. On the other hand, two of plaintiff's witnesses testified that additional switching was requested from defendant's station agent at different times but that same was not furnished until late in the season when, of course, the grapes had already deteriorated.

Giving consideration to all of the testimony, I am of opinion that it was established that the defendant unreasonably delayed transportation and delivery of the grapes and that the evidence presented does not show that such delay was caused by the acts or conduct of plaintiff, but that same was due solely to the failure of defendant to furnish the switching facilities necessary to promptly place the cars on the delivery tracks where plaintiff would be in a position to unload the same.

It is further claimed by defendant that as the shipments were transported in interstate commerce under order bills of lading, consigned to the order of the shippers with instructions to notify the plaintiff, there was no duty on defendant's part to deliver the shipments to plaintiff due to the failure of plaintiff to show that, after receipt of notices of arrival, it had demanded delivery, which demand was accompanied by production and offer to surrender of the bills of lading properly indorsed.

It is not questioned that the order bills of lading contained the following provision: " The surrender of this bill of lading properly endorsed shall be required before the delivery of the property."

It appears that when the notices of arrival were sent to plaintiff the cars were in no case available for delivery to plaintiff, but were either on the storage tracks of defendant at Highland or at its Maybrook station, some twenty-four miles away. It further appears that without requesting or requiring production of the bills of lading the defendant at all times recognized the plaintiff as the person entitled to receive the grapes and, in fact, permitted plaintiff to take possession of same as soon as the cars were placed on the delivery tracks and made available for unloading. It further appears, though there was no proof submitted as to when these bills of lading were delivered to defendant, that same had been turned over to defendant, for at the time of trial the same were in its possession.

At no time during the period between the time when the notices

of arrival were sent to plaintiff and the time when the grapes were finally made available was any issue ever raised by defendant as to the right of plaintiff to the possession of the grapes. Instead, the testimony shows it regarded plaintiff as the person entitled thereto. Furthermore, notices of arrival were sent long before the grapes were available for delivery, and hence, before defendant had completed its contract of transportation. In these circumstances it surely could not expect plaintiff to exhibit and surrender its bills of lading prior to the time defendant was in a position to make delivery. It may be, under the special circumstances here existing, the defendant would have been justified, after arrival of the cars at the Highland station and before placement thereof on the delivery tracks, to require plaintiff to exhibit the bills of lading showing a right to possession of the grapes and to withhold placement thereof until the bills of lading were so exhibited. This, however, it did not do, but, as above stated, at all times recognized plaintiff as the person entitled to receive the grapes, permitting it to unload the cars as soon as same were placed.

I am of opinion, *first*, that defendant was not entitled to require production and surrender of the bills of lading until such time as it had complied with its contract of transportation, and, *second*, even if it had the right to require production of the bills of lading before it had placed the cars on the delivery tracks, it waived this right by not requiring such production, and, having subsequently delivered the grapes to plaintiff without at any time requesting the production of such bills or questioning the right of plaintiff to the possession of the grapes, it is estopped from now taking advantage of the claimed non-compliance by plaintiff with the bill of lading requirements. Had the defendant carrier at any time disputed plaintiff's right to possession or notified plaintiff that delivery would be withheld until the bills of lading were produced, a different situation would be presented. But where, as here, no question was at any time raised as to the right of plaintiff to receive the grapes and the failure to place and make available for delivery was due, according to defendant, solely upon the ground that plaintiff was not able to accept and unload, it is now too late for defendant to interpose this purely technical defense.

Plaintiff is entitled to judgment. Interest is not allowed. Section 480 of the Civil Practice Act, as amended by chapter 623 of the Laws of 1927, allowing interest on unliquidated claims, is not retroactive.

Verdict directed for plaintiff for the sum of $137,894.52, this amount being conceded as plaintiff's damage in the event it is found plaintiff is entitled to recover. Exception to defendant. Thirty days' stay and sixty days to make a case.